A91A2111. LAWTON v. TEMPLE-WARREN FORD, INC. et al.

(416 SE2d 527)

SOGNIER, Chief Judge.

Frank Lawton brought suit against Temple-Warren Ford, Inc. alleging, inter alia, that the dealership defrauded him by selling him a truck represented as a 1984 model when in fact the truck was a 1984 "glider kit" (cab, chassis, front wheels, etc.) built upon an older model truck's engine, transmission, and rear wheels. Lawton amended his complaint to add as defendants the dealership's officers and sole stockholders, R. Glen Temple and Ellis Warren. Partial summary judgment on the issue of liability was entered against the dealership. The trial court granted the stockholders' motion for summary judgment, and Lawton appeals.

Appellant contends the trial court erred by granting appellees' motion for summary judgment because as shareholders and officers of the dealership, appellees are liable for its misconduct, and questions of fact remain whether the evidence warrants piercing the corporate veil on the basis of either undercapitalization or fraud.

(a) Undercapitalization: Appellant points to the deposition of appellee Temple in which he stated that despite the $1 million initial investment he and appellee Warren put into the dealership, he nevertheless considered the dealership to have been "undercapitalized to start with" because appellees "never thought we were going to ever grow that quick." Even accepting appellant's argument that Temple's statement constituted an admission in judicio that the dealership was undercapitalized, "for undercapitalization of a corporation to justify piercing the corporate veil, it must be coupled with evidence of an intent at the time of the capitalization to improperly avoid future debts of the corporation." *Hickman v. Hyzer*, 261 Ga. 38, 39-40 (1) (401 SE2d 738) (1991). There is no evidence of such intent in this case. Nor is there any evidence to controvert appellees' averrals that Warren withdrew $250,000 of the dealership's capital to cover problems in another business he was operating rather than for purposes of improperly avoiding future debts of the dealership. We note that although appellant alleged in his amended complaint that the dealership has ceased doing business and that appellees removed all

of the corporate assets from Georgia, there is no evidence that appellees ceased doing business for any reason other than the fact that the dealership had been failing for many months. Nor does the record disclose any evidence that appellees removed the corporate assets from Georgia in order to strip the dealership of assets necessary to pay existing debts. Id. at 40 (2).

(b) Fraud: We agree with appellant that the type of undercapitalization discussed in *Hickman,* supra at 39-40 (1) provides only one rationale for piercing the corporate veil, e.g., *Marett v. Professional Ins. Careers,* 201 Ga. App. 178, 180-181 (1) (b) (410 SE2d 373) (1991) (corporation as alter ego of individual; commingling personal and corporate assets), and that the separateness of the corporate entity will be disregarded to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to perpetrate fraud or to avoid tort responsibility. *Commonwealth Financial Corp. v. Sherrill,* 197 Ga. App. 403, 404 (398 SE2d 438) (1990). However, we do not agree with appellant's second argument that the fact the dealership's liability for defrauding him has been legally established automatically entitles him to recover damages for that fraud from appellees. " 'A corporation possesses a legal existence separate and apart from that of its officers and shareholders so that the operation of a corporate business does not render officers and shareholders personally liable for corporate acts. (Cit.)' [Cit.]" Id. at 403 (1). "A corporate officer 'who takes part in the commission of a tort by the corporation is personally liable therefor, but an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or cooperated therein (or if he disregarded the corporate form so as to authorize piercing of the corporate veil).' . . . [Cit.]" *Fussell v. Jones,* 198 Ga. App. 399-400 (1) (401 SE2d 593) (1991).

The record in the case sub judice contains appellees' statements in their affidavits and depositions that they were not involved in any way in the sale of the truck to appellant and that they had no knowledge that appellant was not fully informed by the dealership's sales personnel that he was purchasing a glider kit truck with an older model engine. Appellees also deposed that in the regular course of the dealership's business they did not supervise the manner in which sales by the dealership's sales personnel were transacted and were not involved in the routine handling of the paperwork of these sales.

We do not agree with appellant that evidence showing that Temple knew and Warren may have known that the truck in issue was a glider kit truck constitutes evidence contradicting appellees' statements that they did not know that the nature of the truck had been misrepresented to appellant by others. Appellant adduced no evi-

dence controverting appellees' averrals that they were personally ignorant of the fraud perpetrated on him by the dealership's employees. Compare *Wrigley v. Nottingham*, 111 Ga. App. 404, 406 (141 SE2d 859), rev'd in part on other grounds, *Nottingham v. Wrigley*, 221 Ga. 386 (144 SE2d 749) (1965) (corporate officer may not escape personal liability for his tortious misconduct by hiding behind corporate veil). There is thus no evidence that appellees personally committed or specifically directed the commission of the fraudulent act. See *Fussell*, supra at 400 (1). Nor can the inference be drawn from the evidence of record that appellees' ignorance was the result of some internal operating procedures in the dealership deliberately instituted earlier by appellees for the purpose of shielding themselves from liability after indirectly instructing or encouraging the dealership's employees to defraud appellant. In other words, there was no evidence that the use of the corporate entity by appellees was a subterfuge or that appellees employed the separateness of the corporate entity with the intent to avoid personal liability for fraudulent acts they knew would be perpetrated by corporate subordinates.

Although appellant averred in his affidavit that upon talking to appellee Temple after purchasing the truck, Temple agreed to get him another truck, appellant does not allege that this representation was fraudulent and did not adduce any evidence to rebut Temple's sworn statements that he looked for a truck but was unable to find one in a price range that appellant could afford.

Therefore, it appears there is no evidence that at the time of its capitalization, appellees intended to undercapitalize the dealership to improperly avoid future debts of the corporation, see *Hickman*, supra at 39-40 (1), and no evidence that appellees were hiding behind the corporate entity of the dealership in order to insulate themselves either from a fraud they themselves were perpetrating on appellant or from a fraud they knew or encouraged others to perpetrate on him. See *Fussell*, supra at 400 (1). Given that the undisputed facts demonstrate no abuse of the corporate form, the record shows no issue of fact for the jury regarding piercing the corporate veil, and summary judgment was properly entered in favor of appellees. *Hickman, Fussell*, supra.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED FEBRUARY 20, 1992 —
RECONSIDERATION DENIED MARCH 6, 1992 —

*Clarence L. Martin*, for appellant.
*Inglesby, Falligant, Horne, Courington & Nash, Kathleen*

*Horne, Stein & Cauthen, James E. Stein,* for appellees.

